UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

| | |
|---|---|
| JOHN SETTLE, )<br>    *Plaintiff*, )<br>)<br>  v.  )<br>)<br>EQUIFAX INFORMATION SERVICES, LLC, )<br>TRANS UNION, LLC, )<br>ONEMAIN FINANCIAL, and )<br>HOME POINT FINANCIAL f/k/a )<br>STONEGATE MORTGAGE CORPORATION, )<br>    *Defendants*. ) | Case No.   1:18-cv-2431 |

## COMPLAINT WITH JURY TRIAL DEMAND

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 (West) *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources (called "furnishers") that provide credit information to credit reporting agencies.

2. This action is based on Defendants' false reporting on Plaintiff's credit reports and failures to follow reasonable procedures and failures to conduct reasonable reinvestigations with respect to such information.

3. This case also arises from Trans Union, LLC.'s widespread, pattern and practice of disregarding its duties under the FCRA, including but not limited to the following: willfully disregarding its statutorily mandated duty to appropriately reinvestigate information disputed by consumers; willfully disregarding its statutorily mandated duty to notify furnishers of disputed information of consumers' disputes; willfully improperly deleting disputed tradeline information; and willfully disregarding its statutorily mandated duty to provide consumers with prompt notice of the deletion of disputed tradeline information by telephone.

**Factual Allegations Regarding The CDIA, Metro 2, And Credit Risk Scoring.**

4. The reporting of consumer credit information, by credit reporting agencies ("CRAs") and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm.*

5. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

6. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

7. In cooperation with Trans Union LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc., and Innovis Data Solutions, Inc., the CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist data furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515.*

8. The uniform adoption and implementation of the Metro 2 standards is the primary vehicle by which CRAs and data furnishers ensure that they are in compliance with their duties to ensure that they maintain complete and accurate information under the FCRA.

9. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

10. The major national CRAs – Trans Union LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., – also collaborated and developed a browser-based software system that allows the CRAs to electronically notify furnishers easily and quickly of disputed credit reporting information, and for furnishers to easily and quickly respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See, *http://www.e-oscar.org/.*

11. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Dataform ("AUD") processing, as well as other various related data reporting processes.

12. ACDVs are notifications initiated by a CRA, and transmitted to a furnisher, in response to a consumer dispute, and are the primary method the CRAs use to fulfill their statutory obligation to notify furnishers of disputed information of consumers' disputes.

13. TransUnion, Experian and Equifax have actual knowledge that entities reviewing

consumer reports prepared by them reasonably presume they have complied with CDIA guidelines and Metro 2 standards in compiling and reporting the data therein.

14. One such entity that regularly reviews consumer reports, and uses the data contained therein, is the Fair Isaac Corporation. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit risk scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

15. FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and, mix of accounts/types of credit accounts for 10% of a consumer's FICO score. See, ***www.myfico.com/credit-education/whats-in-your-credit-score/.***

16. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's FICO score.

17. Inaccurate or incorrect credit reporting often results in a lower FICO score, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

18. The improper deletion of a mortgage tradeline can also adversely affect a consumer's FICO score, as the deletion removes any positive payment history associated with that mortgage (35% of a consumer's FICO score), it alters the age/length of credit history

(15% of a consumer's FICO score), and it alters the mix of accounts/types (10% of a consumer's credit score).

## Jurisdiction and Venue

19. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 *et seq.*, jurisdiction of this Court arises under 28 U.S.C.A. § 1331 (West).

20. Venue is proper in this Court because a substantial part of the claim arose in Indiana, Settle resides in Indiana, and all Defendants "reside" in Indiana, as that term is used in 28 U.S.C.A. § 1391 (West).

## Parties

21. Plaintiff, John Settle (hereinafter "Settle"), is a natural person who resides in Columbus, Indiana.

22. Settle is an individual and is therefore a "consumer" as that term is defined by 15 U.S.C.A. § 1681a(c) (West).

23. Defendant Equifax Information Services, LLC (hereinafter "Equifax") is a credit bureau that conducts business in Indiana.

24. Defendant TransUnion LLC (hereinafter "Trans Union") is a credit bureau that conducts business in Indiana.

25. Equifax and TransUnion regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties, and use interstate commerce to prepare and/or furnish the reports, and accordingly, are each considered a "consumer reporting agency" as that term is defined by 15 U.S.C.A. § 1681a(f).

26. Home Point Financial f/k/a Stonegate Mortgage Corporation (hereinafter "Stonegate") regularly and in the ordinary course of business furnished information to one or more

consumer reporting agencies about Settle's transactions and is therefore a "furnisher" as that term is used in 15 U.S.C.A. § 1681s-2 (West).

27. OneMain Financial (hereinafter "OneMain") regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Settle's transactions and is therefore a "furnisher" as that term is used in 15 U.S.C.A. § 1681s-2 (West).

**Factual Allegations Regarding Settle's Bankruptcy Proceedings.**

28. On or about January 10, 2017, Settle filed a Chapter 7 bankruptcy proceeding in the Southern District of Indiana, under Cause No. 17-00105-JJG-7.

29. Stonegate was listed on his Schedule D, showing a claim in the amount of $256,111.00. A copy of Schedule D is attached hereto as "Exhibit A."

30. OneMain was listed on his Schedule D, showing a claim in the amount of $17,379.00. *Id*.

31. On or about July 28, 2017, Settle and OneMain entered a Reaffirmation Agreement. A copy of the Order Approving Reaffirmation Agreement is attached hereto as "Exhibit B."

32. On or about March 30, 2017, Stonegate and Settle entered a Reaffirmation Agreement. A copy of the Cover Sheet for Reaffirmation Agreement is attached hereto as "Exhibit C."

33. Settle met all requirements of his Chapter 7 bankruptcy and as a result, he received a discharge by Order dated July 31, 2017. A copy of the Order of Discharge is attached hereto as "Exhibit B."

34. Settle's obligations to OneMain and Stonegate were not discharged or closed as a result of his bankruptcy proceedings.

35. Settle's continued to make timely payments to OneMain and Stonegate during and after his bankruptcy proceedings.

### Inaccurate and Materially Misleading Information Reported by Equifax.

36. Sometime around April of 2018, Settle obtained a copy of his consumer credit report as published by Equifax.

37. The report contained erroneous information as provided by OneMain, published and reported by Equifax. Specifically, the Equifax credit report reflected that Settle's obligation to OneMain was closed and failed to make any indication the obligation was reaffirmed or that Settle continued to make timely payments pursuant to that reaffirmation agreement post discharge.

38. The report also contained erroneous information as provided by Stonegate, now published and reported by Equifax. Specifically, the Equifax credit report failed to reflect the obligation was reaffirmed or that Settle continues to make timely payments pursuant to that reaffirmation agreement.  then sold to another lender.

39. Because the foregoing obligations were reaffirmed, are not closed, were not discharged, and timely payments continue to be made on the obligations, the information described above was inaccurate, incomplete, and materially misleading.

40. Equifax's reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 reporting standards, as discussed above.

41. While not dispositive, Courts rely on such guidance to determine furnisher liability. *See e.g*. In re Helmes, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy" and with zero balance due") *see also* Nissou-Rabban v. Capital One Bank (USA), N.A., 285 F. Supp. 3d 1136 (S.D. Cal., Jan. 23, 2018)

42. Further, failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). *See* Gillespie v. Equifax Info. Servs., LLC., No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

43. Therefore in a letter dated April 19, 2018, Settle disputed the inaccurate and misleading information to Equifax and advised Equifax of the specific facts that rendered the reporting inaccurate and misleading. A copy of the dispute letter is attached hereto as "Exhibit D."

44. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Stonegate and OneMain of Plaintiff's dispute within five business days of receiving Plaintiff's dispute, to forward all relevant information and any documents included with Plaintiff's dispute for Stonegate to review, to conduct a reasonable reinvestigation of the disputed information, and to thereafter correct the tradeline or delete it from Plaintiff's consumer file.

45. In a document dated June 25, 2018, Equifax advised Plaintiff that it had researched his dispute and provided a revised report that reflected its findings. However, the reinvestigation report failed to address the disputed items. A copy of the relevant portions of the Equifax reinvestigation report is attached hereto as "Exhibit E."

46. Upon information and belief, Equifax timely notified Stonegate and OneMain of Settle's dispute in accordance with 15 U.S.C.A. § 1681i (West).

47. In the alternative, Equifax failed to notify OneMain and/or Stonegate at all in violation of 15 U.S.C.A. § 1681i (West).

48. Settle provided all necessary information with his dispute letter to Equifax, does have a current Equifax file, and has actively used credit in the past ten years.

49. Equifax was required to communicate the specifics of Settle's dispute to

Stonegate and OneMain. Likewise, Stonegate and OneMain had a duty to investigate the dispute and accurately report their findings to Equifax.

50. Equifax had an affirmative duty to reasonably reinvestigate the dispute submitted by Settle and to accurately report the tradeline information notwithstanding the information it received from Stonegate and/or OneMain.

**Inaccurate, Incomplete, and/or Materially Misleading Information Reported by TransUnion.**

51. Also in February of 2018, Settle obtained a copy of his credit report as published by TransUnion.

52. That report contained erroneous and incomplete information as provided by OneMain. Specifically, the TransUnion credit report failed to reflect that Settle's obligation to OneMain had been reaffirmed, remains open and was not closed on "1/06/2017", and is also absent of any information reflective of the fact Settle continued making timely payments on the obligation post-discharge.

53. Because Settle's debt to OneMain, was reaffirmed and made payments to OneMain after "01/06/2017", payments which OneMain accepted pursuant to the parties reaffirmation agreement, the information described above was inaccurate and misleading.

54. TransUnion's reporting was also inaccurate and misleading because it does not comply with the CDIA's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

55. While not dispositive, Courts rely on such guidance to determine furnisher liability. *See e.g.,* In re Helmes, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and 'with zero balance due'").

56. Further, failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). See Gillespie v. Equifax Info. Servs., LLC., No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

57. Therefore, in a letter dated April 19, 2018, Settle disputed the inaccurate and misleading information to TransUnion and advised TransUnion of the specific facts that rendered the reporting inaccurate and misleading. A copy of the dispute letter is attached as "Exhibit F."

58. Pursuant to 15 U.S.C. § 1681i, TransUnion had a duty to notify OneMain of Plaintiff's dispute within five business days of receiving Plaintiff's dispute, to forward all relevant information and any documents included with Plaintiff's dispute for OneMain to review, to conduct a reasonable reinvestigation of the disputed information, and to thereafter correct the tradeline or delete it from Plaintiff's consumer file.

59. In response, within a document dated May 18, 2018, Trans Union advised Settle that it had researched his dispute and the current status was being reported correctly. Trans Union provided a copy of the tradeline as reported that reproduced at least some of the errors identified by Settle in his original dispute letter. Specifically, the tradeline still reflected the OneMain account as being closed in Jan. of 2017 and failed to indicate the debt was reaffirmed. A copy of the Trans Union reinvestigation report is attached as "Exhibit G."

60. Upon information and belief, TransUnion timely notified OneMain of Settle's dispute in accordance with 15 U.S.C.A. § 1681i.

61. In the alternative, TransUnion did not notify OneMain at all in violation of 15 U.S.C.A. § 1681i.

62. Upon information and belief, TransUnion timely notified Stonegate of Settle's

dispute and Trans Union did not perform any reinvestigation of Plaintiff's dispute, under either "standard" or "expedited" procedures, as described by § 1681i(a)(8), but instead did nothing. .

63. Plaintiff's dispute was neither frivolous nor irrelevant.

64. TransUnion did not inform Plaintiff that it had determined the dispute was frivolous or irrelevant.

65. Trans Union did not identify any additional information required to investigate Plaintiff's dispute.

### TransUnion's and Equifax's Willful Conduct in Detail.

66. Under § 1681i, which mandates the procedures a CRA must follow in cases of disputed accuracy, there are (only) two scenarios under which a CRA *may* legally be allowed to refrain from notifying the furnisher of disputed information of a consumer's dispute: 1.) if a CRA determines that a consumer's dispute is frivolous or irrelevant; and/or, 2.) if the CRA resolves the dispute under an expedited dispute resolution process.

67. Neither scenario applies to TransUnion's or Equifax's conduct complained of herein.

68. Under § 1681i(a)(3), a CRA *may* be relieved of its duty to notify the furnisher of the disputed information of the consumer's dispute if the CRA determines that a consumer's dispute is frivolous or irrelevant.

69. However, because § 1681i(a)(2) requires that a CRA notify a furnisher of disputed information within five days of receiving a consumer's dispute, the CRA must make the determination that the dispute is frivolous or irrelevant before the five (5) days is up.

70. In the event, a CRA determines that a consumer's dispute is frivolous or irrelevant, § 1681i(a)(3) requires the CRA to notify the consumer notice of the CRA's

determination. That notice must: be given within five days of the CRA's determination; be in writing, or by other means authorized by consumer; state the reason(s) the CRA determined the dispute was frivolous or irrelevant; and, identify any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

71. TransUnion nor Equifax informed Plaintiff that it had determined his dispute was frivolous or irrelevant, as required by § 1681i(a)(3)(B) if a dispute is determined to be frivolous or irrelevant.

72. TransUnion nor Equifax identified any information required to investigate Plaintiff's dispute, as required by § 1681i(a)(3)(C) if a dispute is determined to be frivolous or irrelevant.

73. Rather, in its reinvestigation report, TransUnion stated, "Our investigation of the dispute you recently submitted is now complete."

74. The statement "Our investigation of the dispute you recently submitted is now complete" is patently false – TransUnion did not perform any investigation/reinvestigation.

75. However, the statement does make it clear that Trans Union did not determine Plaintiff's dispute to be frivolous or irrelevant.

76. TransUnion and Equifax had clear notice that the information it was reporting was false and misleading.

77. Plaintiff provided TransUnion and Equifax with all of the necessary information for them to investigate his dispute, and to correct the false, incomplete, and misleading information.

78. If TransUnion and/or Equifax had conducted a reasonable reinvestigation and

notified OneMain and/or Stonegate of Plaintiff's dispute, the information being disputed would be reporting accurately.

79. Despite the foregoing, TransUnion and Equifax made the intentional choice to not conduct a reasonable reinvestigation of Plaintiff's dispute, in reckless disregard of its duties under the FCRA.

80. Accordingly, TransUnion and Equifax have acted willfully.

81. TransUnion and Equifax knew they had a duty to notify OneMain and/or Stonegate of Plaintiff's dispute within five business days of receiving Plaintiff's dispute.

82. TransUnion and Equifax had the ability to easily notify Stonegate and/or OneMain of Plaintiff's dispute, via e-Oscar or otherwise.

83. Despite the foregoing, TransUnion made the intentional choice to not notify Stonegate of Plaintiff's dispute, in reckless disregard of its duties under the FCRA.

**Inaccurate Information as it Pertains to All Furnisher Defendants.**

84. The Defendants are each responsible for following reasonable procedures to assure maximum possible accuracy whenever they prepare consumer reports from information in their shared databases.

85. The Defendants independently and jointly, breached their duties as described above and below.

86. By inaccurately reporting debt information after receiving notice of its errors, the Defendants failed to take appropriate measures as set forth in 15 U.S.C.A. § 1681s-(2)(b)(1)(D) and 1681s-(2)(b)(1)(E).

87. As a result of Defendants' willful actions and omissions, Settle is eligible for

actual damages, statutory damages, punitive damages and reasonable attorney's fees.

## TRIAL BY JURY

88. Settle is entitled to and hereby requests a trial by jury.

## CAUSES OF ACTION

### COUNTS I & II: VIOLATION OF THE FCRA (EQUIFAX)
[15 U.S.C.A. § 1681e(b) and 1681i (West)]

89. Settle incorporates by reference all preceding paragraphs as though fully stated herein.

90. Equifax negligently, or in the alternative willfully, violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Settle's consumer reports.

91. Equifax also negligently, or in the alternative willfully, violated 15 U.S.C.A. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Settle's dispute and by failing to appropriately delete or modify inaccurate information in Settle's file. *See* Zahran v. Bank of Am., 2015 WL 4397779 (N.D. Ill. July 17, 2015)

92. As a result of Equifax's violation of 15 U.S.C.A. § 1681e(b) and 15 U.S.C.A. §1681i Settle has suffered actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the resulting payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a material risk of future financial harm. Therefore, Settle is entitled to recover actual and statutory damages pursuant to 15 U.S.C.A. § 1681n and 1681o (West).

93. Settle is entitled to recover costs and attorney's fees from Equifax pursuant to 15 U.S.C.A. § 1681n and 1681o.

### COUNTS III & IV: VIOLATIONS OF THE FCRA (TRANS UNION)

[15 U.S.C.A. § 1681e(b) and 1681i (West)]

94. Settle incorporates by reference all preceding paragraphs as though fully stated herein.

95. Trans Union willfully, or in the alternative, negligently violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Settle's consumer reports.

96. Trans Union also willfully, and/or with malice, or in the alternative, negligently violated 15 U.S.C.A. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Settle's dispute and by failing to appropriately delete or modify inaccurate information in Settle's file. *See* Zahran v. Bank of Am., 2015 WL 4397779 (N.D. Ill. July 17, 2015)

97. As a result of Trans Union's violation of 15 U.S.C.A. § 1681e(b) and 15 U.S.C.A. §1681i, the continued presence of the inaccurate and/or materially misleading information on Settle's credit report has caused his actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a material risk of future financial harm if the information is not corrected. Those actual damages include the loss of time, payment of increases costs of credit and insurance, and certain out-of-pocket expenses.  Therefore, Settle is entitled to recover actual damages pursuant to 15 U.S.C.A. § 1681n and 1681o (West) and statutory damages pursuant to 15 U.S.C.A. § 1681n.

98. Settle is entitled to recover costs and attorney's fees from Trans Union pursuant to 15 U.S.C.A. § 1681n and 1681o.

**COUNT V: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**[15 U.S.C.A. § 1681s-2(b)]**

99. Settle incorporates by reference all preceding paragraphs as though fully stated herein.

100. Stonegate willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Settle's dispute from one or more consumer reporting agencies, and/or by failing to review all relevant information provided by the consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the inaccurate information.

101. As a result of Stonegate's violations of 15 U.S.C.A. § 1681s-2(b), Settle has suffered actual damage including but not limited to emotional distress, the unjust suppression of his FICO credit score, the payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a certain material risk of future financial harm (and continues to pose a material risk of future harm stemming from the decreased perception of Plaintiff's credit worthiness). Therefore, Settle is entitled to recover actual damages under 15 U.S.C.A. § 1681n and 1681o.

102. In the alternative, Stonegate's actions and omissions were willful, and Settle suffered concrete injury as set forth above, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C.A. § 1681n.

103. Settle is entitled to recover costs and attorney's fees from Stonegate pursuant to 15 U.S.C.A. § 1681n and 1681o.

### COUNT vI:   VIOLATIONS OF THE FCRA
[15 U.S.C.A. § 1681s-2(b)]

104. Settle incorporates by reference all preceding paragraphs as though fully stated

herein.

105. OneMain willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Settle's dispute from one or more consumer reporting agencies, and/or by failing to review all relevant information provided by the consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the inaccurate information.

106. As a result of OneMain's violations of 15 U.S.C.A. § 1681s-2(b), Settle has suffered actual damages including but not limited to emotional distress (including aggravation, anxiety, and loss of rest), the unjust suppression of his FICO credit score, the payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a material risk of future financial harm. Therefore, Settle is entitled to recover actual damages under 15 U.S.C.A. § 1681n and 1681o.

107. OneMain's actions and omissions were willful, caused Settle concrete injury as set for above, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C.A. § 1681n.

108. Settle is entitled to recover costs and attorney's fees from OneMain pursuant to 15 U.S.C.A. § 1681n and 1681o.

**WHEREFORE**, Settle respectfully requests the following relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages pursuant to 15 U.S.C.A. § 1681n;

d. Reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1681n and/or 1681o;

e.  That an Order be issued for the Defendants to modify, delete or block the inaccurate information being reported; and

f.  Such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**BARKER HANCOCK & COHRON**
198 South Ninth Street
Noblesville, IN 46060
Telephone: (317) 219-4746
tcohron@bhclegal.com
*Attorney for Plaintiff*